# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

March 27, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:    *Maussa H. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
       Civil No. 24-3067-DRM

Dear Counsel:

On October 22, 2024, Plaintiff Maussa H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case and the parties' briefs. ECF Nos. 8, 15, 19, 20. I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the Commissioner's decision. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on June 20, 2019, alleging a disability onset date of January 1, 2015. Tr. 185-191. Plaintiff later amended her alleged onset date to June 20, 2019. Tr. 15. Plaintiff was denied initially on December 31, 2019, and upon reconsideration on January 23, 2021. Tr. 94-100; Tr. 106-110. On May 12, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 12-38. Following the hearing, on June 1, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12-38. Plaintiff requested review of the ALJ's decision on June 9, 2022, Tr. 182-184, and on September 22, 2022, the Appeals Council denied review. On October 11, 2022, Plaintiff then filed an action for judicial review. Tr. 554-555. This Court remanded Plaintiff's case to the Commissioner for further administrative proceedings in accordance with section 405(g) of the Social Security Act. Tr. 556-560. Accordingly, on December

---

[1] Plaintiff filed this case against Martin O'Malley, the Acting Commissioner of Social Security on October 22, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Maussa H. v. Frank Bisignano*
Civil No. 24-3067-DRM
March 27, 2026
Page 2

8, 2023, the Appeals Council vacated the final decision of the Commissioner of Social Security and remanded Plaintiff's case to an ALJ for further proceedings. Tr. 561-564. On May 8, 2024, the ALJ held a second hearing and subsequently, on August 20, 2024, denied the Plaintiff's claims for SSI. The August 20, 2025, ALJ decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a). Plaintiff filed this second action for judicial review.

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 20, 2019, the application date. Tr. 492. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "spine disorder; degenerative joint disease and osteoarthritis of the bilateral knees; and obesity." Tr. 493. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 494. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except can lift, carry, push and pull 20 lbs. occasionally and 10 lbs. frequently; can sit for six hours in an eight-hour workday; can stand and walk for six hours in an eight-hour workday; can only frequently, bilaterally, reach, handle, finger and feel; can only occasionally: climb ramps and stairs; balance; stoop; kneel; crouch; or crawl; can never: climb ropes, ladders, or scaffolds.

Tr. 497. At steps four and five, the ALJ determined that Plaintiff has no past relevant work but could perform jobs that existed in significant numbers in the national economy such as laundry folder, cleaner, and sorter. Tr. 509. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 510.

*Maussa H. v. Frank Bisignano*
Civil No. 24-3067-DRM
March 27, 2026
Page 3

## III.   <u>LEGAL STANDARD</u>

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   <u>ANALYSIS</u>

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ "improperly discounted Plaintiff's statements about her symptoms and the evidence in the record that is relevant to her impairments[.]" ECF No. 15 at 8. Specifically, Plaintiff contends that she met her threshold obligation of proving, through objective medical evidence, that her impairments are reasonably likely to cause the alleged symptoms. *Id.* at 11. Consequently, Plaintiff says she was entitled to rely exclusively on subjective evidence to prove that her symptoms prevent her from working a full eight hour day on an ongoing and consistent basis. *Id.* However, the ALJ erred by "discarding" Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. *Id.* Plaintiff further asserts that the ALJ disregarded the Appeals Council's remand instructions and improperly discounted her symptoms based on timing and lack of objective corroboration.

The Commissioner responds that the ALJ's decision is supported by substantial evidence and reflects a thorough evaluation of the record. According to the Commissioner, the ALJ properly applied the governing two-step framework, reasonably found Plaintiff's statements about her symptoms not fully consistent with the medical and other evidence, and adequately explained the RFC determination over a detailed, multi-page analysis. ECF No. 19 at 6-16. The Commissioner maintains that Plaintiff fails to identify any specific limitation that should have been included in the RFC or any evidence the ALJ overlooked, and argues that the ALJ reasonably concluded that no mental limitations were warranted. *Id.* In reply, Plaintiff reiterates that the length of the ALJ's discussion does not cure legal deficiencies, emphasizing that the ALJ recited evidence without meaningfully analyzing it, misapplied the burden of proof, and failed to account for CPP limitations. ECF No. 20 at 2-6. Plaintiff further argues that the ALJ's errors were not harmless, as the vocational expert testified that even modest off-task limitations could be work-preclusive, and therefore remand is required. *Id.*

*Maussa H. v. Frank Bisignano*
Civil No. 24-3067-DRM
March 27, 2026
Page 4

An ALJ properly analyzes subjective complaints by using a two-part test. *See Craig*, 76 F.3d at 594–95. First, the ALJ must assess the objective medical evidence and determine whether the plaintiff has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *4 (S.S.A. Mar. 16, 2016). Second, if the ALJ finds a medically determinable impairment, the ALJ assesses the plaintiff's symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). At the second step, "there need not be objective evidence of the pain [or symptoms] itself or its intensity." *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)).

Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain" or symptoms, a claimant may "rely exclusively on subjective evidence" at the second step. *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Instead, and with a limitation discussed below, the ALJ is required to balance the record evidence because "[a] report of . . . inconsistencies in the objective medical evidence is one of the many factors . . . consider[ed] in evaluating" this prong. *Shelley C.*, 61 F.4th at 360 (quoting SSR 16-3p, 2016 WL 1119029, at *5).

Where a Plaintiff suffers from fibromyalgia or chronic depression, an additional restriction applies. In *Arakas*, the Fourth Circuit stated:

> we join those circuits by holding that ALJs may not rely on objective medical evidence (or the lack thereof)—*even as just one of multiple factors*—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease.

*Arakas*, 983 F.3d at 97 (emphasis added.)

In *Shelley* C., the Fourth Circuit extended the holding of *Arakas* to "depression—particularly chronic depression," holding that it was "one of those other diseases" that does not produce objective medical evidence of the severity of its symptoms. *Shelley C.*, 61 F.4th at 360-61. Thus, an ALJ may not rely on objective medical evidence, or the lack thereof, as even one factor among many, to discount a claimant's subjective complaints regarding symptoms of chronic depression.

*Maussa H. v. Frank Bisignano*
Civil No. 24-3067-DRM
March 27, 2026
Page 5

However, *Arakas and Shelley C.* do not foreclose an ALJ's ability to "weigh[] [a] [p]laintiff's subjective complaints against other evidence in the record," such as by "compar[ing] [a] [p]laintiff's hearing testimony to her previous statements, including those made during medical visits with her primary care provider and her statements regarding her activities of daily living . . . . Such weighing remains permissible under *Shelley C.* and *Arakas.*" *Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-21-2603, 2023 WL 2414497, at \*4 (D. Md. Mar. 8, 2023). *See Kimberly S. v. Comm'r, Soc. Sec.,* No. EA-23-1404, 2024 WL 5007372, at \*7 (D. Md. Dec. 3, 2024) (ALJ's finding that plaintiff's "own subjective reports of improvement [of depression symptoms] with treatment and independent daily activities were inconsistent with the disabling limitations she alleged" was not impermissible reliance on absence of objective medical evidence.)

In *Lonnell J. v. Bisignano*, No. DRM-24-3673, 2026 WL 693344 (D. Md. Mar. 12, 2026), this Court drew a distinction between impermissible reliance on objective medical evidence and an ALJ's appropriate consideration of a claimant's prior subjective statements as recorded in medical records. The Court emphasized that a provider's documentation of a claimant's reported symptoms reflects the claimant's subjective reporting, not independent objective validation. Such documentation therefore does not qualify as "objective medical evidence," and relying on it to discount later assertions regarding the severity of fibromyalgia or chronic depression symptoms does not, standing alone, violate the rule of *Arakas* and *Shelley C.* Specifically, this Court stated:

> In finding that the record evidence did not support the intensity, persistence, and limiting effects of these symptoms, it was not improper for the ALJ to consider that Plaintiff had on particular dates "denied depression" to a provider, "mention[ed] that he wanted to find a stable job," "reported a benefit with meditation, medication, and therapy," "continued to report having a good response on his medications, with a reported improvement in his mood," "denied suicidal and homicidal ideation," "reported a good response in his mood and . . . reported eating and sleeping better on his medications," "stated that his new medication was working well," and the like. These are reasonable "compar[isons] [of] Plaintiff's hearing testimony to [his] previous statements, including those made during medical visits with [his] . . . provider," *Lasharne W.* 2023 WL 2414497, at \*4; and weighing of whether "Plaintiff's own subjective reports of improvement with treatment . . . were inconsistent with the disabling limitations [he] alleged." *Kimberly S.*, 2024 WL 5007372, at \*7.

*Lonnell J.*, 2026 WL 693344, at \*4 (record citation omitted).

In the instant case, the ALJ found Plaintiff's affective disorders to be medically determinable impairments, although non-severe.[3] Based on the ALJ's record citations, his references to Plaintiff's "affective disorders" must be read to include depression and Major Depressive Disorder. *See, e.g.,* Tr. 495 (citing Ex. 4A (Tr. 83-95) (Reconsideration Disability

---

[3] The ALJ did not explicitly state the finding in those terms, but the finding is clear from the discussions of his step two, step three, and RFC analyses. *See* Tr. 494-508.

*Maussa H. v. Frank Bisignano*
Civil No. 24-3067-DRM
March 27, 2026
Page 6

Determination Explanation discussing, *inter alia*, depression); Ex. 5F (Tr. 406) (records of Ramesh Thapar, MD discussing, *inter alia*, Major Depressive Disorder).

In the RFC assessment, which necessarily included consideration of non-severe medically determinable impairments, 20 C.F.R. § 416.945(a)(2), the ALJ undertook the two-part test. He concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 499. With regard to Plaintiff's mental impairments in particular, the ALJ stated:

> [H]er statements regarding her mental functioning endorse debilitating depression and anxiety. . . . Her mental health records show she frequently reports decreased severity/frequency of anxiety and depression symptoms, and endorsed effectiveness of medication. The statements made to her doctors at the time of her appointments starkly contrast with the extensive symptoms and limitations to which she testified at hearing.

Tr. 500.

In supporting these findings, Tr. 501-504, the ALJ engaged in some evaluation of Plaintiff's subjective complaints, including the comparison quoted above between her hearing testimony with her prior statements to medical providers. This was appropriate under *Lonnell J.*, *Lasharne W.*, and *Kimberly S.* For example, the ALJ noted that Plaintiff "acknowledged that her medication was working and she endorsed fewer depressive symptoms and anxiety," and that when compliant with treatment, her symptoms "appear to remain controlled with supportive therapy and medication management." Tr. 501. The ALJ observed that Plaintiff "reported feeling less anxious, nervous, and depressed" even after medication changes, and that throughout the relevant period she "endorsed largely stable symptoms and did not report significant symptoms" in multiple appointments. Tr. 502.

However, the ALJ also relied on providers' clinical observations as to Plaintiff's functioning notwithstanding her depression. For example:

> "The claimant's mental status examinations in late 2017 show she exhibited depressed mood; however she demonstrated *intact and logical thought processes*. She did not exhibit *signs of cognitive difficulty or significant abnormality with respect to thought content, insight, or judgment*."

Tr. 501 (emphasis added).

*Maussa H. v. Frank Bisignano*
Civil No. 24-3067-DRM
March 27, 2026
Page 7

> "Despite not taking her medication, her [December 2018] mental status examination appeared consistent with her previous findings – lessened depression, anxiety, *intact thought process, coherent thought content, and good/intact insight and judgment*."

*Id.* (emphasis added.)

> "The claimant's February 2020 records note the claimant . . . endorsed 'moderate' depressed mood. She exhibited *intact memory, and 'good' concentration and attention*, evidenced by her ability to accurately track without distraction during conversation."

Tr. 502 (emphasis added).

> "The April 14, 2022, records . . . documented no gait abnormality, denial of medication side effects, mildly depressed mood, reducing anxiety, *good concentration, attention, insight, judgment, and intact memory*."

Tr. 503 (emphasis added.)

> "She testified to severe depression that results in an inability to get out of her home or perform basic daily personal care. The claimant's therapy notes and psychiatrist records from 2017-2022 conflict with her testimony. In fact, her records from Dr. Thapar and Ms. Butler consistently document *'good' attention and concentration, and intact memory*, over the entire relevant period."

*Id.* (emphasis added.)

Rather than reflecting Plaintiff's own subjective statements, the italicized items reflect clinical judgments by providers related to "psychiatric signs" or their absence, and thus equate to "objective medical evidence" or its absence. *See* 20 C.F.R. §§ 416.902(k), (l). Relying on this evidence to discount the severity of Plaintiff's depression symptoms is inconsistent with *Shelley C.*, which held that depression is a condition that does not produce consistent objective medical evidence of the severity of its symptoms. Under *Arakas*, an ALJ therefore may not rely on such findings, even as one factor among many, to discount subjective complaints. 61 F.4th at 360-61. Therefore, remand is appropriate.

Because the case is being remanded on other grounds, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion.[4] Additionally, in remanding for further explanation, the

---

[4] The ALJ may also consider the issue acknowledged by the Commissioner at ECF No. 19 at 11, n.4; that the RFC contains no limitation to "simple, routine tasks," despite two paragraphs in the RFC analysis discussing the basis for that limitation. *See* Tr. 503-04. Because the case is being remanded on other grounds, the Court need not consider whether the Commissioner is correct that

*Maussa H. v. Frank Bisignano*
Civil No. 24-3067-DRM
March 27, 2026
Page 8

Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge

---

the issue is waived. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). The Court is not entirely persuaded that the inclusion of these paragraphs is a mere "scrivener's error" resulting from the use of the previous (June 1, 2022) ALJ decision as a "template," because (1) the first paragraph discusses treatment extending into 2024; and (2) the issue appears to be addressed again later in the decision, when discussing the opinions of two state psychiatric consultants. *See* Tr. 506.